1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10 | VERNON G. ELKINS, III, and TERRY    | CASE NO. C10-1366 MJP
W. BENNETT, individually and behalf of
11 | a class of similarly situated persons, and | ORDER ON CLASS
DISABILITY RIGHTS WASHINGTON, | CERTIFICATION AND
12 | | PLAINTIFFS' MOTION FOR A
Plaintiffs, | TEMPORARY RESTRAINING
13 | | ORDER
v.
14
SUSAN DREYFUS, in her official
15 | capacity as Secretary of the Washington
State Department of Social and Health
16 | Services,
17 | Defendant.

18

19           This matter comes before the Court on Plaintiffs' motion for a temporary restraining

20   order and motion to certify a class.  (Dkt. Nos. 25, 26.)  Having reviewed the motions, the

21   responses (Dkt. Nos. 37, 42), the replies (Dkt. Nos. 44, 52), the supplemental responses (Dkt.

22   Nos. 54, 55), and all papers submitted with the briefing, and having heard oral argument on

23   October 4, 2010, the Court GRANTS both motions.  The Court notes it granted the temporary

24   restraining order and motion for class certification on October 4, 2010.  (Dkt. No. 53.)

1                                    **Background**

2          Plaintiffs Vernon Elkins, III, and Terry Bennett are individuals who have been terminated

3   from the State's unemployment benefit program after receiving what they allege to be inadequate

4   notice of termination.  Plaintiffs Elkins and Bennett are joined by Disability Rights Washington

5   in seeking to represent a class of individuals who received or applied to receive unemployment

6   benefits on August 1, 2010 and thererafter and who were denied or terminated without proper

7   notice and an adequate "case review."  Plaintiffs seek injunctive and declaratory relief against

8   Susan Dreyfus, Secretary of Washington State's Department of Social and Health Services

9   ("DSHS").  Plaintiffs seek declarations that the notices sent out prior to termination from the

10  benefits program and the "case review" performed by DSHS as part of the termination were

11  inadequate.  Plaintiffs also seek an injunction to stop any termination of benefits and to reinstate

12  benefits for those terminated from the program without adequate notice, as explained in greater

13  detail below.

14  A.     Statutory Scheme

15         Prior to March 29, 2010, the State of Washington provided benefits through the General

16  Assistance Unemployment ("GA") program to eligible persons incapacitated from gainful

17  employment by reason of bodily or mental infirmity that was likely to continue for at least 90

18  days.  RCW 74.04.005(5) (2009).  The GA program entitled recipients to various forms of

19  assistance, including monetary and medical aid.  To be eligible, a person needed to be unable to

20  work, be at least 18 years old, demonstrate financial need, meet citizenship and alien status

21  requirements, and reside in Washington State.  RCW 74.04.005(6) (2009).  There were no time

22  limits on how long an individual could receive cash benefits.  With certain exceptions, GA was

23  not available to individuals who were eligible to receive federal assistance, including federal

24

1   supplemental security income ("SSI").  <u>See</u> RCW 74.04.005(6)(a), (b) (2009).  Applicants for

2   GA had to obtain SSI benefits if they qualified, and the failure to do so was cause for ineligibility

3   from GA.  RCW 74.04005(5), (6)(a)(i) (2009).  DSHS would assist GA recipients both in

4   determining whether they might be SSI eligible and in applying for SSI.  (Everett Decl. ¶ 9.)

5          After March 29, 2010, the State Legislature enacted a new bill that terminated the GA

6   program and established the Disability Lifeline ("DL") program.  Engrossed Second Substitute

7   H.B. 2782, 61st Leg., 1st Spec. Sess., at 2 (Wash. 2010).  The DL program essentially provides

8   the same assistance as the GA program, but it limited recipients to getting benefits for 24 months

9   within a 60-month period.  <u>See</u> RCW 74.004.005(5)(h)(i).  The 24-month period includes those

10  months an individual received GA or DL benefits.  This time limit change went into effect on

11  September 1, 2010, terminating those who had used more than 24 months of GA/DL benefits.

12  To determine DL eligibility, DSHS is required to perform a "case review" to determine whether

13  the individual is eligible for federal SSI benefits: "A person may not be determined ineligible

14  [from the DL program] due to exceeding the time limit unless he or she has received a case

15  review under this subsection finding that the person does not meet the federal supplemental

16  security income disability standard."  RCW 74.04.005(5)(h)(i).

17         The State Legislature also created a Disability Lifeline Expedited ("DL-X") component

18  of the new DL program.  The DL-X program provides benefits to individuals found "likely" to

19  be eligible for SSI disability benefits "after examination by an appropriate health care provider."

20  RCW 74.04.005(5)(e), (6) (2010).  If DSHS finds the individual eligible for SSI, that person may

21  be enrolled into the DL-X program and receive coverage from the State until the federal SSI

22  determination is made.  Time spent on the DL-X program does not count towards the 24 month

23  limit for DL program benefits.

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 3

1   B.      Relevant Facts

2          Plaintiff Elkins is a disabled and homeless man who has received GA and DL benefits to

3   assist him in treating various mental and physical health issues.  (Elkins Decl. ¶¶ 1-4.)[1]  Plaintiff

4   Elkins relies heavily on a financial grant of $339 a month to cover basic needs.  (Id. ¶ 5.)

5   Plaintiff Bennett is a 56-year-old disabled man who lives in Seattle, and suffers from multiple

6   psychiatric and physical disabilities.  (Bennett Decl. ¶¶ 1, 3.)  His receipt of GA and DL benefits

7   has provided him medical care and treatment that he would otherwise be unable to obtain.  (Id. at

8   ¶ 4.)  He also relies on the cash grant of $339, which goes to paying half of his entire rent, the

9   other half his sister pays.  (Id. ¶ 5.)  Both Elkins and Bennett fear that termination of their DL

10  benefits will adversely and irreparably harm their physical and mental wellbeing.  (Bennett Decl.

11  ¶¶ 6, 7; Elkins Decl. ¶¶ 6, 7.)  Disability Rights Washington ("DRW") is a non-profit

12  organization that advocates for individuals with mental, physical, and developmental disabilities

13  in the State of Washington.  (Stroh Decl. ¶ 4.)  DRW "has specific priorities targeted to protect

14  the due process protections of people with disabilities and advance the self determination of

15  individuals with disabilities."  (Id. ¶ 10.)  All of the members of proposed class who had DL

16  benefits terminated on September 1, 2010 are DRW constituents.  (Id. ¶ 13.)

17         On August 9, 2010, DSHS sent out notices to Plaintiffs Elkins and Bennett and others

18  receiving DL benefits, in an attempt to inform them they could lose their DL benefits because

19  they had used more than the allotted 24 months of DL/GA benefits and that they were not likely

20  to meet SSI disability eligibility.  (Dkt. No. 27 at 7.)  The notices informed them that the new

21  limitations would commence on September 1, 2010.  (Id.)  On August 20, 2010, DSHS sent a

22  _____

23         [1] Although the Court references sealed documents, it does not seal or redact this Order
    because it does not contain personal identifiers or sensitive information that might otherwise be
24  kept under seal.

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 4

1   second notice to Plaintiff Elkins and over 1500 other individuals, stating that they would lose DL

2   benefits as of September 1, 2010.  (See Tayag Decl., Attachment B.)  The notice referred

3   Plaintiff Elkins to the old rules governing the GA program, not the new rules to take effect on

4   September 1, 2010.  Plaintiff Bennett apparently had his DL benefits terminated as of May 31,

5   2010, a decision that he appealed.  (Mathson Decl. ¶ 11.)  According to Defendant, Plaintiff

6   Bennett had his benefits terminated "[d]ue to an unfortunate technical error" from September 1

7   through September 9, 2010.  (Id.)

8           Plaintiffs filed a motion for a temporary restraining order on August 25, 2010, seeking to

9   enjoin Plaintiff Elkins (then the only named Plaintiff) from losing DL benefits.  (Dkt. No. 3.)

10  The Court heard oral argument and denied the motion on August 30, 2010, after finding that

11  Plaintiff Elkins was not facing irreparable harm because he continued to receive DL benefits

12  pending review of his termination from the DL program.  (See Dkt. No. 19, 31-1 at 2-8.)  On

13  September 9, 2010, Plaintiffs filed an amended complaint, naming Plaintiffs Bennett and DRW.

14  (Dkt No. 24.)  Plaintiffs also filed motion for class certification.  (Dkt. No. 25.)  The following

15  day they filed a second motion for a temporary restraining order, and asked the Court to set a

16  hearing for September 30, 2010.  (Dkt. No. 26.)

17          Between the time Plaintiffs filed their motion for TRO and Defendant filed her response,

18  DSHS issued new notices to both individual Plaintiffs and members of the proposed class.  One

19  notice apparently sought to explain the basis for DSHS's SSI eligibility determination, while the

20  other sought to explain the time limit calculation for the DL benefit program.  (Dkt. No. 38 at 13-

21  17.)  During this time, DSHS also determined Plaintiff Bennett was eligible DL-X benefits

22  pending effective June 2010 through July 2011.  (Mathson Decl. ¶ 12, Attachment A.)  The

23  Court reviewed the TRO motion and response and found it necessary to receive a reply brief

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 5

1   from Plaintiffs in light of new facts and several jurisdictional issues pressed by Defendant.  (Dkt.

2   Nos. 50, 51.)  The Court set oral argument for October 4, 2010.  The Court heard argument as to

3   the TRO and the motion to certify the class on October 4, 2010.

4                                          **Analysis**

5   A.      <u>Mootness</u>

6           Defendant argues the case is moot because DSHS has sent out new notices that

7   apparently cured the defects of which Plaintiffs claim.

8           "Voluntary cessation of challenged conduct moots a case, however, only if it is

9   '<u>absolutely</u> clear that the allegedly wrongful behavior could not reasonably be expected to

10  recur.'"  <u>Adarand Constructors, Inc. v. Slater</u>, 528 U.S. 216, 222 (2000) (quoting <u>United States v.</u>

11  <u>Concentrated Phosphate Export Assn., Inc.</u>, 393 U.S. 199, 203 (1968)) (emphasis added).

12  Defendant bears a "heavy" burden to success on its claim of mootness.  <u>Id.</u>

13          Defendant argues that Plaintiffs "present no evidence that the alleged illegal acts of the

14  Department will be repeated."  (<u>Id.</u> at 14-15.)  Defendant misunderstands her burden.  It is not up

15  to Plaintiffs to show that Defendant will not repeat the allegedly wrongful behavior.  This is

16  inadequate to satisfy Defendant's "heavy" burden as to mootness.  The new notices are still

17  alleged to be invalid not only in content, but also as to timing.  The claims are not moot.

18  B.      <u>Eleventh Amendment</u>

19          Defendant argues that the claims Plaintiffs pursue are barred by the Eleventh Amendment

20  because the relief sought against the State is retroactive and monetary.

21          The Eleventh Amendment "deprive[s] federal courts of jurisdiction over suits by private

22  parties against unconsenting States."  <u>Seven Up Pete Venture v. Schweitzer</u>, 523 F.3d 948, 952

23  (9th Cir. 2008).  Under <u>Ex Parte Young</u>, "a suit seeking prospective equitable relief against a

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 6

1   state official who has engaged in a continuing violation of federal law is not deemed to be a suit

2   against the State for purposes of state sovereign immunity." In re Ellett, 254 F.3d 1135, 1138

3   (9th Cir. 2001) "In determining whether the doctrine of Ex parte Young avoids an Eleventh

4   Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the]

5   complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

6   prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645

7   (2002) (quotation omitted).  As Defendant admits, "Ex Parte Young relief is available to remedy

8   continuing violations of federal statutory as well as constitutional law."  (Dkt. No. 42 at 13

9   (quoting In re Ellett, 254 F.3d at 1138 (citation omitted)).)

10        Plaintiffs maintain that all of the notices they have received are defective and that the

11   case review is inadequate, such that the termination of their DL benefits violates Due Process

12   and state law.  They seek relief in the form of a declaration that the case review process does not

13   comply with state law, and an injunction enjoining any termination or denial of DL benefits until

14   DSHS provides adequate case review and adequate notice.  (Am. Compl. at 18.)  They also seek

15   an injunction ordering DSHS to "restore any benefits that were unlawfully withheld prior to the

16   provision of an adequate case review and service of an adequate notice."  (Id.)

17        Only part of Plaintiffs' requested relief is prospective and not barred by the Eleventh

18   Amendment.  The request for an injunction and declaration requiring new notices and case

19   review is prospective.  The request is remarkably similar to the one at issue in Edelman v.

20   Jordan, where the Supreme Court held that a request to enforce compliance with federal law in

21   processing welfare applications was prospective.  415 U.S. 651, 667-69 (1974).  Moreover,

22   Plaintiffs assert that there is an ongoing violation every month that DL benefits are denied based

23   on defective notices.  The Court also has jurisdiction over Plaintiffs' request to enjoin any

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 7

1  termination of October benefits, both monetary and otherwise.  See Porter v. Schweiker, 527 F.

2  Supp. 150, 152 (D. Minn. 1981).  However, just as in Edelman, Plaintiffs' request to obtain

3  retroactive payment for previously-owed monetary benefits is not prospective and therefore

4  barred by the Eleventh Amendment.  415 U.S. at 667-69.  Specifically, the request for

5  reinstatement of cash grants to Plaintiffs due in September is retrospective.  The Court is without

6  jurisdiction to order such relief.  However, the Court has authority to order DSHS to reimburse

7  any provider for DL-covered medical services that were obtained after September 1, 2010, that

8  have yet to be paid by the State.  This is prospective in nature and the Court has jurisdiction to

9  order the State to pay such benefits.

10  C.      Class Certification

11          Plaintiffs seek to represent a class of individuals:

12          (a) who received or will receive or applied or will apply for General Assistance –
             Unemployable or Disability Lifeline benefits on August 1, 2010, or thereafter;
13
14          (b) whose assistance was terminated or will be terminated or application was
             denied or will be denied by DSHS because of the "case review" and 24-month
             time limit set forth in RCW 74.04.005(5)(h)(i); and
15
16          (c) who were sent or will be sent the notices attached as Appendix A or other
             similar notices.

17  (Am. Compl. ¶ 39.)

18          Rule 23 "provides a one-size-fits-all formula for deciding the class-action question."

19  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S.Ct. 1431, 1437 (2010).  A class

20  action may be maintained if the party seeking certification meets all four criteria in Rule 23(a)

21  and at least one of the three categories of Rule 23(b).  Rule 23(a) requires the Court to find that:

22          (1) the class is so numerous that joinder of all members is impracticable;
             (2) there are questions of law or fact common to the class;
23          (3) the claims or defenses of the representative parties are typical of the claims or
             defenses of the class; and
24

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Plaintiffs here seek certification under Rule 23(b)(2), which requires the Court to find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The Ninth Circuit recently reaffirmed that "at the class certification stage, while Eisen [v. Carlisle & Jacquelin, 417 U.S. 156 (1974)] prohibits a court from making determinations on the merits that do not overlap with the Rule 23 inquiry, district courts must make determinations that each requirement of Rule 23 is actually met." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 590 (9th Cir. 2010) (en banc).  This is to be a "rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied." Id. at 594. The Ninth Circuit rejected a "significant proof" requirement to be imposed on a plaintiff seeking certification of a class. Id. at 595.

1.   Numerosity

Plaintiffs have amply demonstrated that numerosity is satisfied in this case.  As Defendant admits, over 1500 individuals received the allegedly defective notices for the September 2010 termination of DL benefits and many more were sent the notices for termination of benefits starting October 1, 2010.  Defendant raises no serious dispute as to numerosity, choosing instead to address questions of typicality.  (See Dkt. No. 37 at 16-17.)  The Court finds the proposed class sufficiently numerous as to make joinder of all plaintiffs impractical. See Fed. R. Civ. P. 23(a)(1).

2.   Common questions of law or fact

The Court finds there to be common questions of law and fact applicable to all members of the proposed class.  Common questions facing all members of the proposed class include: (1)

1   whether the same notices sent out everyone sufficient to satisfy Due Process; (2) whether the

2   process to make the SSI determination by DSHS was adequate under state law; and (3) whether

3   the notices as to how Defendant performed the "case review" were sufficient to satisfy Due

4   Process.  Defendant argues that because both Plaintiff Elkins and Bennett have appealed their

5   terminations of DL benefits, there are no common questions of fact and law.  (Dkt. No. 37 at 18.)

6   This is a red-herring.  Defendant overlooks the fact that both Plaintiffs continue to press the

7   argument that all of the notices as to termination of DL benefits were inadequate and that the

8   terminations were not proper.  These claims involve questions common to the proposed class,

9   regardless of whether the named Plaintiffs are currently receiving benefits.  The Court finds there

10  to be sufficient common questions of fact and law to satisfy Rule 23(a)(2).

11          3.      Typicality

12          The Court finds Plaintiffs' claims to be typical of those of the proposed class.  Both

13  named individual Plaintiffs had their DL benefits terminated after receiving the same or similar

14  notices that are alleged to be defective.  They allege that the "case review" underlying their

15  terminations was performed according to a deficient process applied to all persons who have had

16  their DL benefits terminated for the 24 month time limit.  These allegations are common to the

17  proposed class.  Defendant again argues that the named Plaintiffs are atypical because they have

18  had their benefits reinstated.  Yet this does not go to the typicality of the injury suffered, which is

19  the same for the named individual Plaintiffs and the proposed class.  These are injuries that stem

20  from the defective notices.  The fact that the named individual Plaintiffs have appealed their

21  terminations does not show that the Court will be distracted by issues unique to them.  The Court

22  finds typicality satisfied.  Fed. R. Civ. P. 23(a)(3).

23          4.      Adequacy

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 10

1    The Court is satisfied the named individuals and class counsel will represent the class.

2    Fed. R. Civ. P. 23(a)(4).  The main inquiry here is whether the named plaintiffs and counsel have

3    conflicts of interest with other class members, and whether the named Plaintiffs will prosecute

4    the action vigorously on behalf of the class.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th

5    Cir. 1998).  Here, both Plaintiffs Bennett and Elkins have demonstrated their interest in

6    prosecuting this case by filing the instant complaint and seeking to appeal the denials of the own

7    DL benefits.  DRW exists to represent the interests of those with disabilities and those within the

8    proposed class.  The Court finds the named Plaintiffs to be adequate.  Defendant does not

9    challenge the adequate of class counsel and the Court finds counsel adequate.

10       5.    Certification under Rule 23(b)(2)

11       Plaintiffs here seek injunctive and declaratory relief that, if granted, will apply equally to

12   all members of the proposed class.  DSHS's actions here apply to those in the proposed Class

13   that received inadequate advanced notice and inadequate case reviews.  The Court finds the

14   requirements of Rule 23(b)(2) easily satisfied.

15       6.    Class Definition

16       Defendant raised at oral argument the potential that the class definition is overly broad

17   because some of the notices at issue apply to the DL-X program and not the DL program.  While

18   one of the new notices addresses eligibility for the DL-X program alone, it is still sufficiently

19   confusing and overlapping with the question of whether a person may be eligible for DL

20   benefits.  (Dkt. No. 38 at 13-15.)  Eligibility for DL benefits, like entry in the DL-X program,

21   requires DSHS to determine SSI eligibility.  RCW 74.04.005(5)(h)(i).  Thus, any discussion from

22   DSHS regarding SSI eligibility implicates the DL program.  The Court cannot read the two

23   notices separately, especially if the Court considers the average person who receives both such

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 11

1    notices (and Defendant has not argued that persons within the Class will receive only the DL-X

2    notice and not the DL benefit notice).  The Court is not convinced to certify separate classes.

3    The Court certifies the class as requested by Plaintiffs and outlined above.

4    D.      Temporary Restraining Order

5           Plaintiffs request a temporary restraining order, enjoining Defendant from terminating

6    any Class member who received a defective notice and "case review" from August 1, 2010 to the

7    present.  The Court finds issuance of the TRO proper, except to the extent that the Court is

8    without jurisdiction to order reinstatement of past monetary benefits.  The Court does have

9    jurisdiction to and so orders DSHS to pay for covered medical services rendered after September

10   1, 2010, the bills for which have not been received by Plaintiffs, the Class, Defendant, or DSHS

11   as of October 4, 2010.

12          1.      Standard

13          A plaintiff seeking injunctive relief "must establish that he is likely to succeed on the

14   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

15   balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

16   Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008) (rejecting the Ninth

17   Circuit's approval of an injunction when plaintiffs only demonstrated the "possibility" of

18   irreparable harm); see also Alliance for Wild Rockies v. Cottrell, ___ F.3d ___, No. 09-35756,

19   2010 WL 2926463, at *3-5 (9th Cir. Jul. 28, 2010) (holding the Ninth Circuit's "sliding scale"

20   approach continued to be valid after Winter).

21          2.      Likelihood of Success on the Merits: Due Process

22          The termination of welfare benefits "involves state action that adjudicates important

23   rights" and the state's conduct must comport with the requirements of due process.  Goldberg v.

24

1   Kelly, 397 U.S. 254, 261 (1970).  To determine whether a given procedure is constitutionally

2   sufficient, the Court must consider (1) the private interest implicated by the state action, (2) the

3   "risk of an erroneous deprivation of such interest through the procedures used, and the probably

4   value, if any, of additional or substitute procedural safeguards," and (3) the state's interest,

5   "including the fiscal and administrative burdens" that alternative procedures would require.

6   Mathews v. Eldridge, 424 U.S. 319, 335 (1976); see also Greene v. Babbitt, 64 F.3d 1266, 1274

7   (9th Cir. 1995).  In the context of public benefits, a notice of termination "must be reasonably

8   calculated to apprise the claimants of the action taken and afford them an opportunity to present

9   their objections."  Rodriguez v. Chen, 985 F. Supp. 1189, 1194 (D. Ariz. 1996).

10          Plaintiffs have made a strong case that the first sets of notices sent in August were

11  deficient.  The notices do not offer an explanation as to how DSHS determined whether Plaintiffs

12  Elkins and Bennett qualified for SSI benefits or how the agency calculated the 24 month time

13  limit.  The new notices sent in September are also likely deficient.  As to the SSI determination,

14  Plaintiffs explain that the new notices do not identify the 5-step sequential evaluation used to

15  determine SSI eligibility.  The new notices also offer an incomplete summary of the 5-step

16  sequential process.  See 20 C.F.R. § 416.920(4).  Rather, the notice refers recipients to over 100

17  federal regulations without specifying which might be relevant.  This is not a meaningful denial

18  as required by Goldberg because it does not allow the recipient to understand the reasons for

19  denial and prepare an appeal.  See Rodriguez, 985 F. Supp. at 1193-94.  Plaintiffs also explain

20  that the new notices' explications of the reasons for denial are conclusory and vague.  The Court

21  agrees.  It is difficult to know how the SSI determination was made, the nature of the documents

22  reviewed or how the agency determined the person was capable of future work.  Plaintiffs lastly

23  argue the new notices are inadequate to justify denial of September benefits because they were

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 13

1   untimely.  The notices were sent out in mid-September, when by state law they had to be sent 10

2   days prior to September 1 to terminate September benefits.  WAC 388-458-0030 (notice must be

3   sent out ten days in advance of termination).  A letter sent to Mr. Elkins confirms that the notice

4   was sent after termination, as it indicates his benefits ended 9/2010.  (Dkt. No. 38 at 16.)   While

5   WAC 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 allows amendment of notice, it appears it can only be done if an ALJ first

6   allows it.  This is yet another reason the new notices are likely inadequate.  See Ryan v. Dreyfus,

7   No. C-09-0908RAJ, 2009 WL 2914139, at *2 (W.D. Wash. Sept. 4, 2009) (noting in a similar

8   situation that post-termination hearings do not remedy defects in pre-termination hearings where

9   Medicaid benefits were terminated).

10          The Court notes separately one particularly problematic component of the new notices

11   that is almost certain to provoke confusion.  One new form notice opens with the following:

12   "YOU DO NOT MEET THE FEDERAL SSI DISABILITY STANDARD."  (Dkt. No. 38 at 13.)

13   This statement presents a host of risks.  A person reading this may simply conclude that he or she

14   may never obtain federal SSI benefits.  Yet, the State is not authorized to make any such

15   determination.  This also poses the risk of someone in need being discouraged from applying for

16   SSI benefits.  While the Court understands that the SSI eligibility determination is a component

17   of DSHS's DL eligibility analysis, it cautions against making such broad pronouncements

18   without better explanation and readability.

19          The Court finds a strong likelihood of success on the merits of Plaintiffs' Due Process

20   claim as to all notices.

21          3.     Likelihood of Success on the Merits: Case Review Adequacy

22          Plaintiffs also seek a declaration that the DSHS failed to provide an adequate case review

23   consistent with RCW 74.04.005(5)(h)(i).  Plaintiffs argue that the case review requires the same

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 14

1   5-step sequential analysis used in the federal context of whether a person is entitled to SSI

2   benefits and that the process used now is inadequate.   The law states:

3          A person may not be determined ineligible due to exceeding the time limit unless
           he or she has received a case review under this subsection finding that the person
4          does not meet the federal supplemental security income disability standard.

5   RCW 74.04.005(5)(h)(i).  This implies that the case review requires the agency to perform the 5-

6   step sequential review that is set out in 20 C.F.R. § 416.920(4).  Defendant has not argued

7   otherwise.  Plaintiffs are likely to succeed on their claim that the "case review" process

8   employed by DSHS is inadequate.  Plaintiffs argue that DSHS employed a "Disability Review

9   Tool" rather than perform a full SSI 5-step sequential review to determine SSI eligibility.

10  Plaintiffs have a colorable claim that this is inadequate under State law.  The Court finds there to

11  be a likelihood of success on the merits of this claim

12         4.      Irreparable harm

13         Plaintiffs have demonstrated that the Class faces the real threat of irreparable harm.  The

14  Ninth Circuit has held in the context of standing, that "[w]hen a named plaintiff asserts injuries

15  that have been inflicted upon a class of plaintiffs, we may consider those injuries in the context

16  of the harm asserted by the class as a whole, to determine whether a credible threat that the

17  named plaintiff's injury will recur has been established."  See Armstrong v. Davis, 275 F.3d 849,

18  861 (9th Cir. 2001).  This is precisely the case here, especially as to irreparable harm for the

19  Class.  The Court finds it proper to analyze irreparable harm in light of the Class.

20         As the Supreme Court noted in Goldberg, public assistance satisfies a "brutal need."

21  Denial of benefits of any member of the class exposes that individual to grave harm.  The lack of

22  access to medical resources, medical assistance, shelter, and food are among the many needs to

23  prevent Plaintiffs and the Class from suffering from irreparable harm.  (See Stroh Decl. ¶ 15;

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 15

1   Bennett Decl. ¶¶ 6, 7; Elkins Decl. ¶ 6, 7; Conerly Decl. ¶ 4; Zook Decl.)  While Defendant has

2   placed the two named individual Plaintiffs back on DL benefits pending their appeal (or onto

3   DL-X benefits), they have not done so for everyone in the Class.  As Plaintiff DRW makes clear,

4   there are potentially hundreds of individuals who have lost benefits after receiving the notices

5   who have not been fortunate enough to appeal the decisions and have lost benefits.  (Stroh Decl.

6   ¶¶ 13, 15.)  The Court therefore finds there to be irreparable harm without the issuance of the

7   TRO.

8          The Court also points out the conundrum faced by Plaintiffs in seeking the TRO on this

9   issue.  It would appear that both times Plaintiffs sought a TRO, Defendant had placed the named

10  individual Plaintiff back on DL or DL-X, such that the Plaintiff could not demonstrate a current

11  loss of benefits.  The Court does not suggest Defendant acted nefariously.  However, Plaintiffs

12  face the possibility that they could never obtain a TRO or preliminary injunction because

13  Defendant could add a newly named Plaintiff back on the DL benefit program.  It is partly for

14  this reason that the Court finds certification of the Class particularly appropriate to rule on at this

15  juncture in the proceedings.  Plaintiffs have demonstrated irreparable harm.

16         5.      Balance of Hardship and Public Interest

17         These elements weigh strongly in Plaintiffs' favor.  The assistance the DL program

18  provides is vital for Plaintiffs and the Class.  While the public's interest is served by conserving

19  the resources of the state, the need to the Plaintiffs and Class is extreme and more substantial.

20  The Class' and Plaintiffs' suffering "is far more compelling than the possibility of some

21  administrative inconvenience or monetary loss to the government."  Lopez v. Heckler, 713 F.2d

22  1432, 1437 (9th Cir. 1983).  The public interest is served in providing assistance to the Class

23  pending resolution of this dispute.  The public also has a strong interest in insuring that public

24

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 16

1   programs are administered in compliance with Due Process.  The Court finds these two factors

2   weigh in Plaintiffs' favor.

3          The Court therefore GRANTS the TRO as follows: (1) Defendant is enjoined from

4   terminating DL benefits to anyone who received the August, or September or notices similar to

5   those appended to this order; (2) Defendant must reinstate medical and monetary benefits to

6   those who have been terminated from or denied DL benefits in or for the month of October

7   pursuant to the notices at issue; and (3) Defendant is ordered to reimburse any provider for DL-

8   covered medical services that were obtained after September 1, 2010, that have yet to be paid by

9   the State.

10         6.      Bond

11         Considering the limited resources faced by Plaintiffs and the Class, the Court waives the

12  bond requirement.

13                              **Conclusion**

14         The Court GRANTS Plaintiffs' motion to certify the class.  The Court certifies a class of

15  persons similarly situated to the named Plaintiffs, as explained above.  The Court also GRANTS

16  Plaintiffs' request for a temporary restraining order.  The Court finds a sufficient likelihood of

17  success on the merits, that the Class faces irreparable harm, and that the balance of hardships and

18  public interest favor the issuance of the TRO.  No bond is required.  The Court clarifies that it

19  granted the TRO on October 4, 2010 at oral argument.

20         The clerk is ordered to provide copies of this order to all counsel.

21         Dated this 6th day of October, 2010.

22

23

24                                          Marsha J. Pechman
                                            United States District Judge

ORDER ON CLASS CERTIFICATION AND
PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 17