UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VERNON G. ELKINS, III, et al., | CASE NO. C10-1366 MJP |
| Plaintiffs, | ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AND DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| SUSAN DREYFUS, | |
| Defendant. | |

This matter comes before the Court on Plaintiffs' motion for summary judgment and request for a permanent injunction (Dkt. No. 76), as well as Defendant's motion to dismiss (Dkt. No. 86). Having reviewed the motions, the responses (Dkt. No. 78, 88), the replies (Dkt. No. 84, 90), the supplemental filings, and all relevant documents, and having held oral argument on the matter on July 14, 2011 (Dkt. No. 92), the Court GRANTS in part Plaintiffs' motion for summary judgment, ISSUES the permanent injunction, and DENIES Defendant's motion to dismiss.

**Background**

A.      Statutory Background

        Prior to March 29, 2010, the State of Washington provided benefits through the General

Assistance Unemployment ("GA") program to eligible persons incapacitated from gainful

employment by reason of bodily or mental infirmity that was likely to continue for at least 90

days.  RCW 74.04.005(5) (2009).  The GA program entitled recipients to cash assistance and

medical aid.  To be eligible, a person needed to be unable to work, be at least 18 years old,

demonstrate financial need, meet citizenship and alien status requirements, and reside in

Washington State.  RCW 74.04.005(6) (2009).  There were no time limits on how long an

individual could receive cash benefits.  With certain exceptions, GA was not available to

individuals who were eligible to receive federal assistance, including federal supplemental

security income ("SSI").  See RCW 74.04.005(6)(a), (b) (2009).  Applicants for GA had to

obtain Supplemental Security Income ("SSI") benefits if they qualified, and the failure to do so

was cause for ineligibility from GA.  RCW 74.04.005(5), (6)(a)(i) (2009).  DSHS would assist

GA recipients both in determining whether they might be SSI eligible and in applying for SSI.

(Everett Decl. ¶ 9.)

        After March 29, 2010, the State Legislature enacted a new bill that terminated the GA

program and established the Disability Lifeline ("DL") program.  Engrossed Second Substitute

H.B. 2782, 61st Leg., 1st Spec. Sess., at 2 (Wash. 2010).  The DL program essentially provides

the same assistance as the GA program, but it limited recipients to getting benefits for 24 months

within a 60-month period.  See RCW 74.04.005(5)(h)(i).  The 24-month period includes those

months an individual received GA or DL benefits.  This time limit change went into effect on

September 1, 2010, terminating those who had used more than 24 months of GA/DL benefits.

To terminate DL benefits for a recipient who has exceeded the time limit, DSHS must perform "a case review under this subsection finding that the person does not meet the federal supplemental security income disability standard." RCW 74.04.005(5)(h)(i). If the person does not meet SSI criteria, the benefits are to be terminated. If the person does meet SSI eligibility, she is eligible for benefits under the Disability Lifeline Expedited ("DL-X") component of the DL program, which contains no time limitation. The DL-X program provides benefits to individuals found "likely" to be eligible for SSI disability benefits "after examination by an appropriate health care provider." RCW 74.04.005(5)(e), (6) (2010).

On June 15, 2011, the governor signed into a law a bill that replaces the DL and DL-X benefit programs. See Engrossed Substitute House Bill HB 2082 (Dkt. No. 89-1). The change in law goes into effect on October 31, 2011, and will effectively end the DL benefit program and the 24 month time limitation. (See id. at 18.)

B.      Factual Background

Plaintiff Vernon Elkins III is a disabled and homeless man who has received GA and DL benefits to assist him in treating various mental and physical health issues. (Elkins Decl. ¶¶ 1-4.) Elkins relies heavily on a financial grant of $339 a month to cover basic needs, and he also relies on medical assistance through the DL program. (Id. ¶ 5.) On August 9, 2010, DSHS sent Elkins a letter telling him that the GA program was ending and being replaced by the DL program. (Dkt. No. 17 at 6.) The letter informed Elkins that as of September 1, 2010, the new DL program limited recipients to 24 months of benefits in a 60-month period. The letter also stated that if Elkins had a disability that met SSI requirements "these time limits do not apply." (Id.) The letter told Elkins that "[w]e have completed our review of your case. Based on the information

we have, you do not meet the SSI disability requirements." (Id.)  The letter did not inform Elkins what documents were reviewed or what requirements were applied.

On August 16, 2010, DSHS mailed Elkins a second letter, this time informing him that he would have his DL benefits terminated as of September 1, 2010, because he had "received the maximum of 24 out of the last 60 months of Disability Lifeline Program Benefits."  (Dkt. No. 17 at 8.)  The letter did not inform Elkins how DSHS had calculated the number of months.  Prior to termination, Elkins filed a request for a hearing regarding his termination of benefits.  (Dkt. No. 17 at 11.)  Pending his appeal, Elkins continued to receive DL benefits.

On August 25, 2010, Elkins filed suit, alleging that the notices DSHS sent violated Due Process, and that the case review violated state law.  Plaintiff filed a motion for a temporary restraining order on August 25, 2010.  (Dkt. No. 3.)  The Court denied the motion on August 30, 2010, after finding that Elkins was not facing irreparable harm because he continued to receive DL benefits pending an administrative appeal of his termination from the DL program.  (See Dkt. No. 19; Dkt. No. 31-1 at 2-8.)  The Court did find Elkins to have standing, however.  On September 9, 2010, Plaintiffs filed an amended class action complaint, naming Terry Bennett and Disability Rights Washington ("DRW") as Plaintiffs.  (Dkt. No. 24.)  Plaintiffs' amended complaint continues to seek an injunction requiring "adequate written notice before these public assistance and medical benefits are terminated."  (Dkt. No. 24 at 15.)

Plaintiff Bennett is a 56-year-old disabled man who lives in Seattle, and suffers from multiple psychiatric and physical disabilities.  (Bennett Decl. ¶¶ 1, 3.)  His receipt of GA and DL benefits has provided him medical care and treatment that he would otherwise be unable to obtain.  (Id. at ¶ 4.)  He also relies on the cash grant of $339, which goes to paying half of his rent, the other half of which his sister pays.  (Id. ¶ 5.)  Bennett was informed his DL benefits

would be terminated as of May 31, 2010.  (Mathson Decl. ¶ 11.)  On June 1, 2010, his DL

benefits were terminated.  (Bennett Decl. ¶¶ 8-9.)  Bennett contends that although he asked for a

hearing, he received no benefits for June, July, and most of August, 2010.  (Id.)  DSHS has

submitted a declaration stating that Bennett was given continuing benefits pending the outcome

of his appeal.  (Mathson Decl. ¶ 10.)  On August 9, 2010, DSHS sent Bennett a notice that it did

not find him eligible for SSI benefits and that if he exceeded the 24 months of DL benefits, he

would be terminated.  (Dkt. No. 27 at 7.)  On September 10, 2010, DSHS determined Bennett

was eligible for DL-X benefits effective June 2010 through July 2011.  (Mathson Decl. ¶ 12 and

Attachment A.)   According to Defendant, Bennett's benefits were terminated "[d]ue to an

unfortunate technical error" from September 1 through September 9, 2010, and those benefits

were quickly restored.  (Mathson Decl. ¶ 11.)

On September 9, 2010, Plaintiffs filed a second motion for a temporary restraining order

("TRO") and a motion for class certification, for which the Court set a hearing on October 4,

2010.  (Dkt. Nos. 25, 26, 51.)  After Plaintiffs filed their motion for a TRO, DSHS issued new

notices to both individual Plaintiffs.  On September 15, 2010, DSHS sent Elkins a new letter

explaining that he was being terminated from the DL program because he exceeded the 24 month

time limit.  (Dkt. No. 38 at 16.)  DSHS set out the date he started receiving benefits and the end

date, which showed the time Elkins received benefits was 33 out of the past 60 months.  (Id.)

The letter also stated that "[w]e previously reviewed your case and determined that you were not

likely to meet the federal SSI disability standard."  (Id.)  The letter also provided Plaintiff with

information on how to appeal the decision.  (Id. at 16-17.)

In a separate letter dated September 17, 2010, DSHS informed Elkins that he did not

meet the federal SSI disability standard.  (Dkt. No. 38 at 13-14.)  The letter referenced the

federal regulations for SSI benefits, but it referred to the entire chapter of regulations. The letter

stated that DSHS had reviewed four medical reports from 2008 to 2010, and a statement of

health, education and employment from Plaintiff dated December 26, 2007. (Id. at 14.) DSHS

concluded on the basis of these documents that his "diagnosis of anxiety disorder does not keep

[him] from returning to [his] prior work in a hotel as a night auditor." (Id.) DSHS found that

Plaintiff's condition was not severe enough to keep him from working twelve months in a row.

(Id.) The letter provided appeal rights and information on how to challenge the determination.

(Id.)

The Court granted the TRO and certified a class on October 6, 2010. (Dkt. No. 56.) The

Class is defined to include persons on the GA or DL benefits programs "whose assistance was

terminated or will be terminated or application was denied or will be denied by DSHS because of

the 'case review' and 24-month time limit set forth in RCW 74.04.005(5)(g)(i)" and who were

sent notices similar to those sent in August and September, 2010. (Dkt. No. 56 at 8.) On

October 20, 2010, DSHS announced that it would not impose a time-limit for DL recipients

because it lacked the resources to conduct disability case reviews. (Dkt. No. 70 at 8-9.) Instead,

DSHS announced it would make across-the-board reductions to all recipients. (Id.) In late

October, 2010, DSHS sent notices to DL recipients that the time limit would not be applied to

their benefits. (Everett Decl. ¶ 8.) In December, 2010, DSHS sent a notice to DL recipients

stating:

> We told you that we were ending your disability lifeline (DL) benefits because
> you met the 24 out of 60 month time-limit. We changed our mind. We decided
> not to end your DL benefits due to time limits. We restored your DL cash and
> medical benefits. . . .

(Dkt. No. 80 at 6.) DSHS maintains that "[d]ue to lack of sufficient administrative resources,

including staffing, DSHS does not currently have plans to apply time-limits to DL benefits in the

future." (Everett Decl. ¶ 11 (Dkt. No. 80 at 2).)  Defendant's counsel has clarified that it has only revoked the time-limit related termination notices, not the notice regarding the SSI determination.  (Dkt. No. 77 at 5-6.)

The Office of Administrative Hearings scheduled two hearings regarding Elkins' appeals. The first related to the time limit determination and the other related to his eligibility for DL-X benefits.  At a pre-hearing conference on March 3, 2011, DSHS informed Elkins it no longer sought to terminate him for time limits and it reinstated his benefits.  Elkins withdrew his time-limit related appeal.  (Behrens Decl. ¶ 9.)  On April 24, 2011, Elkins was also determined eligible for DL-X benefits effective January 1, 2011, and he withdrew his second appeal. (Behrens Decl. ¶¶ 10-11.)

C.      Pending Motion

Plaintiffs seek a declaratory judgment that the notices sent to the Class prior to termination violate Due Process.  The Court held a hearing on the motion on July 14, 2011.  The Court asked Plaintiffs to draft what they believed was an acceptable notice, and permitted Defendant to file a response.  Plaintiffs' proposed notice informs the addressee that DSHS has "reviewed your case to determine if you qualify for the Disability Lifeline Expedited (DL-X) program" and has "determined you do not qualify for DL-X and CN Medicaid at this time." (Dkt. No. 93-1 at 2.)  CN Medicaid is "Categorically Needy Medicaid," which is offered through the DL-X program.  (Id.)  The notice then informs the recipient of the upcoming termination of the DL program on November 1, 2011.  The proposed notice also includes a lengthy explanation of the SSI rules, what evidence DSHS considered in making its decision, and space to explain DSHS's analysis in the context of the five-step sequential SSI analysis.

**Analysis**

A.      <u>Summary Judgment and Motion to Dismiss Standards</u>

     Summary judgment is not warranted if a material issue of fact exists for trial. <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show the absence of a genuine issue concerning any material fact. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. <u>Id.</u> at 324.

     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). A plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief.'" <u>Twombly</u>, 550 U.S. at 555 (citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555).

B.      <u>Standing</u>

Defendant challenges Plaintiff Bennett's standing under the theory that he never faced termination of DL benefits for time limits. The Court disagrees and notes separately that Defendant does not challenge Plaintiff Elkins' or Disability Rights Washington's standing.

The "irreducible constitutional minimum" of Article III standing has three "elements":

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" . . . . Second, there must be a causal connection between the injury and conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (alterations in original). "[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury [is] certainly impending." Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) (quotation omitted).

Plaintiff Bennett has standing to pursue the claims of the Class. The Class is composed of those who faced termination or denial of DL benefits "because of the 'case review' and 24-month time limit." (Dkt. No. 56 at 8.) Bennett received notice that he would have his DL benefits terminated if he exceeded the 24 month of DL benefits. (Dkt. No. 37 at 7.) He also had his benefits terminated for what appears to have been at least 2 months and for a period in September, 2010, after the notices were sent to the Class. Thus, Bennett satisfies standing: he alleges an actual, concrete, and particularized harm (inadequate due process prior to his loss of benefits), the lack of Due Process is traceable to Defendant, and it can be redressed. He has standing to assert a Due Process claim. The Court rejects Defendant's argument as to standing.

C.      Ripeness

Defendant also argues that Plaintiffs' claims are not ripe.  The Court disagrees.

"Standing and ripeness under Article III are closely related."  <u>Colwell v. Dep't of Health and Human Servs.</u>, 558 F.3d 1112, 1123 (9th Cir. 2009).  A suit is ripe when it presents "'concrete legal issues, presented in actual cases, not abstractions.'"  <u>United Pub. Workers v. Mitchell</u>, 330 U.S. 75, 89 (1947) (quoting <u>Elec. Bond & Share Co. v. Sec. & Exch. Comm'n</u>, 303 U.S. 419, 443 (1938)).  "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 808 (2003).  Thus, even if a matter is ripe for Article III purposes, the Court may find it unripe as a prudential matter.  "The question of prudential ripeness 'is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  <u>Colwell</u>, 558 F.3d at 1124 (quoting <u>Abbott Labs v. Gardner</u>, 387 U.S. 136, 149 (1967)).

Defendant argues that Elkins' claim is not ripe  because he never lost his benefits because he appealed the termination decision.  This argument rings hollow.  It remains a fact that he was terminated from the program, even if he received interim benefits.  Elkins' claim is that the pre-termination notice was unconstitutional, regardless of whether he received interim benefits after he was terminated and appealed the decision.  Defendant also argues that it sent a revised notice with more information explaining the termination while Plaintiff Elkins' appeal was pending.  However, that notice was made after the termination was effective.  A new notice is only effective if the recipient has his full rights restored and a new notice mailed out prior to re-termination.  <u>See</u> <u>Ryan v. Dreyfus</u>, No. C09-0908RAJ, 2009 WL 2914139, at *2 (W.D. Wash.

Sept. 4, 2009).  And by statute, DSHS cannot retroactively terminate benefits without a proper

pre-termination notice.  WAC 388-458-0030 (notice must be sent out ten days in advance of

termination).  This does not render the claim unripe.

D.    Mootness

        Defendant argues that Plaintiffs' claims are moot because both Plaintiffs have now been

placed on the DL-X program and because the entire DL program is set to be terminated on

October 31, 2011.  The argument is ultimately incorrect.

        "In determining whether a request for declaratory relief ha[s] become moot, . . .

basically, the question in each case is whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Pub. Util.

Comm'n of State of Cal. v. F.E.R.C., 100 F.3d 1451, 1458 (9th Cir. 1996) (quotations omitted).

Where the defendant has voluntary ceased its purportedly inappropriate conduct, the case "might

become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior

could not reasonably be expected to recur."  Friends of the Earth, 528 U.S. at 189 (quotation

omitted).  "It is well settled that 'a defendant's voluntary cessation of a challenged practice does

not deprive a federal court of its power to determine the legality of the practice.'"  Id. (quoting

City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)).  Thus, the party asserting

the claim of voluntary cessation bears a "heavy burden of persuad[ing] the court that the

challenged conduct cannot reasonably be expected to start up again."  Id. (quotation omitted).

"[W]here there is no reasonable . . . expectation that the alleged violation will recur, and where

interim relief or events have completely and irrevocably eradicated the effects of the alleged

violation, the case is moot."  Am. Cargo Transp., Inc. v. United States, 625 F.3d 1176, 1179 (9th

Cir. 2010) (quotation omitted).  Where the government asserts that a case is moot, "unlike in the case of a private party, we presume the government is acting in good faith."  Id. at 1180. Deference is generally given only where the government has announced a permanent or clearly articulated official change to a policy.  Id. at 1179-80.

Defendant first argues the case is moot because "the time-limit termination process that [Plaintiffs] challenge no longer applies to them, and will not apply to them in the foreseeable future."  (Dkt. No. 78 at 15.)  Defendants ignore the fact that this case involves an entire class of individuals who face potential termination of DL benefits for time limits.  Because the Court has certified a class, Defendants bear the burden of showing not just that the named Plaintiffs' claims are moot, but that the Class' claims are too.  Where a class has been certified, it "acquire[s] a legal status separate from the interest asserted by the [named plaintiff]," such that a "controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot."  Sosna v. Iowa, 419 U.S. 393, 399, 402 (1975); see United States Parole Comm'n v. Geraghty, 445 U.S. 388, 402 (1980) (noting that that even where the class representative's claim was resolved, the class's claims were not moot); Sze v. I.N.S., 153 F.3d 1005, 1009 (9th Cir. 1998).  Although Plaintiffs Bennett and Elkins do not face termination for time limits, members of the Class do.  Defendant has not shown all of the Class members are now on the DL-X program and not subject to termination for time limits.  The claims are not moot.

Defendant argues further that the case is mooted by DSHS's voluntary decision not to terminate members of the Class for time limits.  The facts do not support this argument. Defendant has told members of the Class that DSHS "changed its mind" about terminating DL recipients based on time limits.  (Dkt. No. 80 at 5.)  DSHS's Program and Policy Operations

Manager states that "[d]ue to a lack of sufficient administrative resources, including staffing, DSHS does not currently have plans to apply time-limits to DL benefits in the future." (Everett Decl. ¶ 11 (Dkt. No. 80 at 2).) Defendant has not announced a clear or permanent policy change. It appears poised, ready and willing to enforce the law, and the time limitation remains the law, at least until October 31, 2011. Defendant argues that the Court must give special deference to its voluntary cessation as proof the case is moot. See Am. Cargo, 625 F.3d at 1180. Yet cases giving deference do so where the government announces a clear or permanent policy change, not merely statements like those here that the government changed its mind or that it "does not currently have plans" to enforce the law. See id. at 1179-80 (giving deference to the government when it announced a "new permanent . . . policy" and citing cases where the government made a permanent change or announced an official policy change). The Court does not find the voluntary cessation moots the claims.

Defendant also argues that the legislature has mooted the case by passing a new law that will remove the DL program entirely. "A statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994). While the change in law would moot any terminations for time limits, the law itself does not go into force until October 31, 2011. Thus from the date of this order to October 31, 2011, Defendant is not precluded from enforcing the time limitation should it find the resources to do so. Because the Court does not find the case presently moot, the pending legislative change does not moot the claims either. The Court rejects Defendant's mootness argument and considers the merits of Plaintiffs' claims.

E.     Eleventh Amendment

1   Defendant again raises the argument that Plaintiffs' claims are barred by the Eleventh

2   Amendment.  The Court has considered this argument now multiple times.  Because Plaintiffs

3   seek only prospective equitable relief, their claims are not barred by the Eleventh Amendment.

4   See Seuver v. Connell, 439 F.3d 1142, 1148 (9th Cir. 2006) (noting that prospective equitable

5   relief is permissible under Ex Parte Young and the Eleventh Amendment).

6   F.    Due Process

7       Plaintiffs allege that the notices DSHS sent in August 2010 and September 2010 were

8   inadequate to apprise them and the Class of the reasons for their termination from or denial of

9   DL benefits.  The Court agrees with Plaintiffs.

10      The termination of welfare benefits "involves state action that adjudicates important

11  rights" and the state's conduct must comport with the requirements of Due Process.  Goldberg v.

12  Kelly, 397 U.S. 254, 261 (1970).  To determine whether a given procedure is constitutionally

13  sufficient, the Court must consider (1) the private interest implicated by the state action, (2) the

14  "risk of an erroneous deprivation of such interest through the procedures used, and the probably

15  value, if any, of additional or substitute procedural safeguards," and (3) the state's interest,

16  "including the fiscal and administrative burdens" that alternative procedures would require.

17  Mathews v. Eldridge, 424 U.S. 319, 335 (1976); see also Greene v. Babbitt, 64 F.3d 1266, 1274

18  (9th Cir. 1995).  In the context of public benefits, a notice of termination "must be reasonably

19  calculated to apprise the claimants of the action taken and afford them an opportunity to present

20  their objections."  Rodriguez v. Chen, 985 F. Supp. 1189, 1194 (D. Ariz. 1996).

21      1.    August Notices

22      The August notices are constitutionally deficient.  The notices do not offer an explanation

23  as to how DSHS calculated the 24 month time limit such that the recipient can challenge the

24

termination of their benefits.  This is a particularly minimal burden on DSHS, yet it failed to

provide the information.  The notices also fail to explain how DSHS made the SSI eligibility

determination, and there is no reference to the 5-step sequential evaluation used to determine SSI

eligibility.  See 20 C.F.R. § 416.920(4).  It is difficult to know how the SSI determination was

made, what documents DSHS may or may not have reviewed or how the agency determined the

person was capable of future work.  This is not a meaningful denial as required by Goldberg

because it does not allow the recipient to understand the reasons for denial and prepare an

appeal.  See Rodriguez, 985 F. Supp. at 1193-94.  There is no dispute of fact surrounding these

notices, and Plaintiffs are entitled to judgment in their favor as to the August notices'

deficiencies.

The notices also contain erroneous citations to the relevant regulations in violation of

Due Process. The August 9, 2010, notice referred to two state regulations, copies of which were

not included in the notice, and no means were given to access them.  When providing pre-

deprivation notice, the citation to laws must be accurate and means provided to the recipient to

access the relevant law.  Defendant has not demonstrated a dispute of material fact exists and

Plaintiffs are entitled to judgment as a matter of law on this claim.

2.      September Notices

Plaintiffs argue the notices DSHS sent in September were constitutionally inadequate.

The Court agrees.  The notices were deficient not only because they were sent after termination,

but also because they failed to provide sufficient detail to satisfy Due Process.

The notice sent to Plaintiffs Elkins was not adequate because it was sent post-termination.

Plaintiff Elkins was terminated on September 1, 2010.  Yet the notice he received in September

was not sent out until September 10, 2010, making it untimely.  (Dkt. No. 38 at 16.)  State law

1   required that the notice be sent 10 days prior to September 1 in order to properly terminate

2   benefits in September. WAC 388-458-0030 (notice must be sent out ten days in advance of

3   termination). While WAC 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 allows amendment of notice, it can only be done if an

4   ALJ first allows it. There is no evidence of such an action. This is one basis on which the Court

5   finds the September notices inadequate to satisfy Due Process. See Ryan, 2009 WL 2914139, at

6   *2 (noting in a similar situation that post-termination hearings do not remedy defects in pre-

7   termination hearings where Medicaid benefits were terminated).

8          The September notice regarding DSHS's SSI determination is also substantively

9   inadequate. First, in explaining the five-step sequential analysis, the letter refers the recipient to

10  the entire chapter of federal regulations, rather than the specific ones at issue. (Dkt. No. 38 at

11  13.) This is not adequate to provide notice of what legal regime applies to the agency's decision.

12  See Rodriguez, 985 F. Supp. at 1195-96. Nowhere has DSHS attempted to summarize or explain

13  the five-step sequential process. Second, the explanation of why Elkins did not meet the SSI

14  standards is unnecessarily cursory. The letter properly makes note of what records were

15  reviewed and points to the condition or conditions the agency does not think satisfies the SSI

16  standard. (Dkt. No. 38 at 14.) Yet, the analysis itself does not track the five-step sequential

17  analysis or explain why the medical condition is inadequate to satisfy the SSI eligibility.

18  Ultimately, the notices only provide a conclusory statement that "[w]e have determined that your

19  condition is not severe enough to be considered disabled or to keep you from working for 12

20  months in a row as provided under federal SSI disability standards." (Dkt. No. 38 at 14; Dkt.

21  No. 45 at 8, 12.) The lack of specificity makes it extremely difficult to determine the actual

22  reason for why the recipient fails to meet the SSI standards. This is not sufficient for purposes of

23  Due Process.

24

The September 15, 2010, notice regarding the time-limit calculation also violates Due Process. It continues to provide an incorrect citation to WAC 388-475-0050(c), which does not exist. This fails Due Process. See Rodriguez, 985 F. Supp. at 1195-96. Aside from this one error, the substance of the September notice is adequate. It explains the months in which the DL benefits were received and a calculation of the total number of months over a sixty-month period. Were it not for the technical error noted above, the notice is constitutionally adequate.

The Court finds no dispute of fact exists and GRANTS summary judgment on the Due Process claims related to the September notices.

3.      Categorically Needy Notices

In some of the briefing and at oral argument, Plaintiffs urged the Court to consider notices sent to DL recipients regarding DL-X and CN benefits. Plaintiffs have argued that DSHS continues to send out notices that violate Due Process to those who are denied Categorically Needy ("CN") benefits within the DL program. The Court agrees with Defendant that this issue is beyond the present litigation. While the complaint could be read broadly to encompass a Due Process claim related to those who are denied CN medical benefits, the Class does not include those individuals. The Court certified a Class of individuals who were either denied or terminated from DL benefits because they exceeded the 24 month time limit. (Dkt. No. 56 at 8.) This necessarily limits the scope of the present litigation and excludes the claims related to those claiming a loss or denial of DL-X and CN benefits. The new notices and any claims related to receipt of CN or DL-X benefits are outside the scope of this litigation. Similarly, the termination of the DL program in its entirety is outside the scope of this case. The Court considers only the claims of those individuals who face denial or termination of DL benefits for exceeding the 24 month time-limit and who did not receive adequate Due Process.

G.     <u>Permanent Injunction</u>

Plaintiffs ask the Court to enter a permanent injunction to "prevent[] DSHS from terminating Disability Lifeline benefits to any recipient until DSHS provides the recipients with adequate pre-termination notice." (Dkt. No. 76 at 25.) With some narrowing, the Court agrees.

To obtain a permanent injunction "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2756 (2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

1.     <u>Irreparable Injury</u>

The threatened loss of a public benefit to which a person is entitled can be sufficient to show irreparable injury. See Beltran v. Myers, 677 F.2d 1317, 1322 (9th Cir. 1982). Here, the Class faces the possibility of losing their DL benefits without adequate opportunity to understand the reasons why or to prepare an appeal. As Plaintiffs Elkins and Bennett have attested, the DL benefits are of critical importance to them and the Class. Given that the claims are not moot and DSHS possesses the power to terminate benefits to entitled individuals in "brutal need," Plaintiffs have shown an irreparable injury to the Class in the absence of an injunction. See Geraghty, 445 U.S. at 402 (consideration of the class's harm is appropriate).

2.     <u>Other Remedies' Adequacy</u>

An injunction barring the termination of benefits unless and until DSHS sends out proper notices that satisfy Due Process is the only equitable remedy that makes sense in this case.

1    Plaintiffs do not assert an absolute right to the DL benefits.  Rather, they seek an opportunity to

2    understand and challenge any finding that they are not entitled to DL benefits.  As Plaintiffs

3    Elkins and Bennett have shown, they were in fact entitled to DL-X benefits and would have been

4    wrongly terminated from the DL benefit program without legal intervention.  Moreover, because

5    Plaintiffs seek only equitable relief, their loss is not something that can be compensated

6    monetarily or with some other remedy.

7            3.      Balance of Hardships

8            Plaintiffs are correct that the balance of hardships tips in favor of the Class.  The Court

9    recognizes that DSHS faces an administrative and financial burden in sending out new notices

10   and providing more thorough information as to the SSI determination before termination.  Yet,

11   this burden is rather minimal considering the fact DSHS must perform the SSI determination

12   adequately in the first instance in order to administer the DL benefit program in accordance with

13   state law.  The provision of notice prior to termination is a real, yet reasonable burden.  This

14   burden is far outweighed by that placed on members of the Class, who face homelessness, loss of

15   necessary medical benefits, and other serious risks without DL benefits.  The impact on

16   processing terminations in accordance with Due Process is outweighed by the harm caused to a

17   person wrongfully terminated without Due Process.

18           4.      Public Interest

19           A state's compliance with Due Process is always in the public's interest.  We desire our

20   government to abide by the constitution, regardless of whether we believe the government should

21   or should not provide public benefits.  See Lopez v. Hecker, 713 F.2d 1432, 1437 (9th Cir. 1983).

22   Moreover, allowing DSHS to terminate DL recipients without adequate notice will harm the

23

24

public's interest in an orderly administration of public benefits. The Court finds an injunction to be in the public's interest.

5.    Proposed Notice

The Court requested Plaintiffs submit a notice that they believed should be sent to the Class that would satisfy Due Process. Defendant filed objections to the form, largely focusing on Plaintiffs' attempt to expand the litigation to cover DL-X and CN benefit denials as well as the termination of the DL program. The Court agrees with Defendant that the proposed notice, in part, exceeds the scope of the litigation. However, the Court finds much of the substance of the proposed notice to be adequate to provide constitutional notice to DL benefit recipients as to DSHS's determination of SSI eligibility—a component of the present litigation.

The main problem with Plaintiffs' proposed notice is that it addresses persons who have been determined not to qualify for the DL-X or CN coverage. It does not focus on terminations or denials of DL benefits due to the imposition of the time limits in RCW 74.04.005(5)(h)(i). As explained above, this case does not involve issues regarding CN benefits, nor does it involve questions regarding the termination of DL program at the end of October. As such, the first and second pages of the letter (Dkt. No. 93-1 at 2) are not entirely on point. These pages discuss termination or loss of CN benefits, not DL benefits for time limits. The third page also makes references to DL-X benefits, an issue outside the scope of this case. The letter would otherwise be proper if it focused on denials and terminations of DL benefits due to the time limitation RCW 74.04.005(5)(h)(i).

The Court finds the remaining pages of the proposed notice adequate to satisfy Due Process. The second page provides a straightforward explanation of the applicable state and federal law. It also explains the evidence considered and the means of appealing the decision.

The third through fifth pages neatly lay out the 5-step sequential process in a clear manner that is adequate to apprise the recipient of the basis of DSHS's determination. With any references to DL-X and CN benefits removed, the notice is proper.

The Court authorizes use of the proposed notice with the following changes: (1) all references to CN and DL-X benefits and the November 1, 2011 end of the DL program must be removed; (2) the letter must focus on DL benefits alone, and discuss the DL benefit's time limit rule as the basis for the loss of DL benefits; and (3) the letter must discuss and explain the reason why the SSI determination is necessary. The Court appends to this order an edited copy of Plaintiffs' proposed order with those elements that are beyond the scope of the complaint and Class action removed. This is to guide the parties in understanding what elements must be removed and where additions should be made. Prior to termination or denial of any DL benefits for exceeding the time limit of RCW 74.04.005(5)(h)(i), DSHS must send out a notice that incorporates those features of Plaintiffs' proposed notice that the Court has approved. DSHS must also send out a notice regarding its calculation of the time spent receiving DL benefits. To satisfy this requirement, DSHS may use the letter it sent to Plaintiff Elkins on September 15, 2010 provided that it references the proper laws at issue. (Dkt. No. 38 at 16-17.)

6.    Scope of Injunction

The Court GRANTS the permanent injunction as follows: (1) DSHS shall reinstate all Class members who have been terminated from or denied DL benefits for exceeding the time limits and who received notices of termination similar to those sent to Plaintiffs in August and September 2010; (2) Defendant shall halt all ongoing terminations or denials of DL benefits for time limits; and (3) the Defendant shall ensure that only the court-approved notices are sent to Class members prior to termination or denial.

H.    <u>Motions to Strike and Request for Telephonic Hearing</u>

Defendant asks the Court not to consider the notices DSHS has sent out regarding CN benefits. (<u>See</u> Dkt. No. 94 at 1.) As explained above, the Court has not considered the notices regarding CN benefits in rendering its decision. The Court DENIES the request as MOOT.

Plaintiffs ask the Court to strike Defendant's response to their proposed notice. (Dkt. No. 97.) The Court did not provide explicit direction to Defendant as to what could or could not be included in her response to Plaintiffs' proposed notice. While the response may have overreached in some part, the Court does not find it improper. The Court DENIES Plaintiffs' motion to strike.

Plaintiffs also request a telephonic motion pursuant to Local Rule CR 7 in order to ask the Court to enjoin issuance of a pamphlet to Class members about the termination of the DL program. (Dkt. No. 97 at 2.) Defendants have not agreed to participate in a telephonic motion, and without such agreement the Court will not grant the hearing. The Court DENIES the request. Moreover, as explained above, the termination of the DL benefit program itself is not an issue within the scope of the litigation. Plaintiffs' request to enjoin mailing of notices regarding termination of the DL program does not appear proper.

**Conclusion**

The Court finds the imposition of a permanent injunction proper in light of the Due Process violations it has found. DSHS has shown a marked inability to craft a constitutionally-adequate notice to sufficiently apprise Class members of the reasons they face denial or termination of DL benefits. While the Court recognizes that the SSI eligibility analysis is not necessarily straightforward, it is integral to DSHS's eligibility determination for DL benefits. DSHS must be able to explain its decision prior to denying or taking away benefits based on SSI

eligibility determinations. To this end, Plaintiff has proposed a notice that is straightforward and constitutionally adequate. With the alterations the Court has noted above, it will satisfy Due Process. The Court GRANTS in part Plaintiffs' summary judgment motion, and DENIES Defendant's motion to dismiss. The Court GRANTS the permanent injunction, as set forth above. The Court shall separately enter judgment in Plaintiffs' favor.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of August, 2011.

Marsha J. Pechman
United States District Judge